**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:20-CV-00176-HBB**

**GEORGE BALL, JR.**                                                                                    **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI, ACTING COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION[1]**                                           **DEFENDANT**

**MEMORANDUM OPINION**
**AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of George Ball, Jr. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both the Plaintiff (DN 16) and Defendant (DN 20) have filed a Fact and Law Summary.   For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**, and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 14).   By Order entered April 26, 2020 (DN 15), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

FINDINGS OF FACT

Previously, Plaintiff protectively filed an application for Disability Insurance Benefits on August 27, 2015 (Tr. 55).   He alleged disability beginning April 27, 2013 (Id.).   Following denial of the application at the initial and reconsideration levels, Plaintiff filed a written request for hearing on August 2, 2016 (Id.).   On February 8, 2018, Administrative Law Judge Jennifer B. Thomas ("ALJ Thomas") conducted a video hearing from Paducah, Kentucky, with Plaintiff and his counsel, Samuel Kyle LaMar, participating from Owensboro, Kentucky (Id.).   Ralph M. Crystal, an impartial vocational expert, testified during the hearing (Id.).

In a decision dated April 19, 2018, ALJ Thomas found that Plaintiff has the following severe impairments: degenerative disc disease of the back; migraines; borderline intellectual functioning; profound vision impairment of the right eye; mild carpal tunnel syndrome; and bilateral shoulder disorder (Tr. 57).   At the third step, ALJ Thomas concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Id.).   At step four, ALJ Thomas determined that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following postural, manipulative, visual, and environmental limitations: he is limited to occasional climbing of ramps and stairs, but should never climb ladders, ropes, or scaffolds; he is limited to occasional kneeling, stooping, crouching and crawling; he is capable of frequent reaching overhead in all directions with his bilateral upper extremities and frequent bilateral handling and fingering with his upper extremities; he should avoid all exposure to hazards, including work with dangerous moving mechanical parts and work at unprotected heights; he is limited to occasional work involving vibrations; he is limited to no work requiring vision with both

2

eyes, being limited to work that allows for only left eye vision; he is further limited to understanding, remembering and carrying out simple routine tasks (Tr. 59).   Having found Plaintiff is not capable of performing his past relevant work with the above RFC (Tr. 69), ALJ Thomas moved to step five where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 69-71).   ALJ Thomas found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.).   Therefore, ALJ Thomas concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from April 27, 2013 through April 19, 2018, the date of the decision (Tr. 23).   There is no indication in the record that Plaintiff requested Appeals Council review of ALJ Thomas' decision.

Currently before the Court are applications for Disability Insurance Benefits and Supplemental Security Income that Plaintiff protectively filed on June 11, 2018 (Tr. 15, 237-40, 241-51).   Plaintiff alleged that he became disabled on April 20, 2018 as a result of degenerative disc disorder; migraines; borderline intellectual functioning; profound visual impairment right eye; carpal tunnel syndrome; bilateral shoulder disorder; pinched nerve in neck; degenerative arthritis of the back; knee problems, and restless leg syndrome (Tr. 15, 78, 97, 118, 137, 237, 282).   The Disability Determination and Transmittal forms indicate Plaintiff's applications were denied initially on November 12, 2018, and upon reconsideration on January 21, 2019 (Tr. 115, 116, 154, 156).[2]

---

2  The Administrative Law Judge decision indicates that Plaintiff's applications were denied initially on November 13, 2018, and upon reconsideration on January 21, 2019 (Tr. 15).   The Court will rely on the dates set forth in the Disability Determination and Transmittal forms as the Administrative Law Judge decision appears to contain a typographical error concerning the November date.

3

On August 9, 2019, Administrative Law Judge Stacey L. Foster ("ALJ Foster") conducted a video hearing from Paducah, Kentucky (Tr. 15, 28, 30).   Plaintiff and his counsel, Sara J. Martin Diaz, participated from Owensboro, Kentucky (Id.).   Tina Stambaugh, an impartial vocational expert, testified during the hearing (Id.).

In a decision dated November 29, 2019, ALJ Foster evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 15-23).   ALJ Foster determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018 (Tr. 17).   At the first step, ALJ Foster found Plaintiff has not engaged in substantial gainful activity since April 20, 2018, the alleged onset date (Id.).   At the second step, ALJ Foster concluded that Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; degenerative joint disease of the shoulders; degenerative joint disease of the left knee; carpal tunnel syndrome; migraines; a visual impairment of the right eye; borderline intellectual functioning; an anxiety disorder; posttraumatic stress disorder (PTSD); and depression (Id.).   At the third step, ALJ Foster concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 18).

At the fourth step, ALJ Foster found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) subject to the following postural, environmental, and mental limitations: no climbing of ladders, ropes, or scaffolds; no more than occasional stooping, kneeling, crouching, crawling, or climbing ramps and stairs; frequent, but not constant, overhead reaching with the upper extremities; frequent, but not constant, handling and fingering with the upper extremities; no more than occasional exposure to

4

vibration; avoid all exposure to hazards; requires work that involves only monocular vision; can understand, remember, and carry out simple instructions and procedures involving brief initial learning periods (defined as periods of 30 days or less); can maintain concentration, persistence, and pace for simple tasks involving little or no independent judgment and minimal variation; can tolerate occasional interaction with supervisors, coworkers, and the public; and can adapt to the pressures and changes of a routine work environment (Tr. 18-19).   ALJ Foster found that Plaintiff is unable to perform his past relevant work as a boilermaker/mechanic because this skilled and heavy exertional employment would exceed Plaintiff's RFC (Tr. 21).

ALJ Foster proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 21-23).   ALJ Foster found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.).   Therefore, ALJ Foster concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from April 20, 2019 through November 29, 2019, the date of the decision (Tr. 23).

Plaintiff timely filed a request for the Appeals Council to review ALJ Foster's decision (Tr. 233-36).   The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

<u>CONCLUSIONS OF LAW</u>

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); <u>Cotton v. Sullivan</u>, 2 F.3d 692, 695 (6th Cir. 1993); <u>Wyatt v. Sec'y of Health & Human Servs.</u>, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   <u>Landsaw v. Sec'y</u>

5

of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."   Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a),

416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.  *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1)   Is the claimant engaged in substantial gainful activity?

2)   Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3)   Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)   Does the claimant have the RFC to return to his or her past relevant work?

5)   Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

<u>Challenges to RFC Determination</u>

1.  Arguments of the Parties

Plaintiff mounts three challenges to the ALJ's RFC determination (DN 16-1 PageID # 718-23).   First, Plaintiff argues there was not substantial evidence to support the right shoulder, left arm and hand, and bilateral knee limitations ALJ Foster included in the physical RFC determination (Id. at PageID # 718-21) (citing Tr. 18-19).[3]   Next, Plaintiff maintains that

---

3 Plaintiff initially makes a general assertion that ALJ Foster failed to recognize the limiting effects of Plaintiff's longstanding history of degenerative disc disease, three previous right shoulder surgeries, degenerative joint disease,

substantial evidence does not support ALJ Foster's RFC determination because she failed to properly consider the combined effects of Plaintiff's physical and mental impairments (Id. at PageID # 722).[4]   Finally, Plaintiff contends substantial evidence does not support ALJ Foster's determination that Plaintiff's condition has not worsened since the prior decision dated April 19, 2018 (Id. at PageID # 722-23).

In support of his first argument (Id. at PageID # 718-21), Plaintiff cites excerpts of his own testimony (Tr. 34-35, 36-37, 40-41); Dr. Farmer's April 10, 2019 treatment note acknowledging Plaintiff's complaints of worsening right shoulder pain and left knee pain (Tr. 592); a July 8, 2019 treatment note prepared by Dr. Jain (Vanderbilt Orthopedics) recognizing Plaintiff's claim of worsening right shoulder pain (Tr. 605); consultative examiner Dr. Nickols' comments about right shoulder, left arm and fingers, and knees (Tr. 501-02); emergency room visit bilateral knee pain (Tr. 515-558); and vocational expert testimony about impact of limitation to occasional overhead reaching and occasional handling and fingering (Tr. 49, 50-51).   In support of his second contention (Id. at PageID # 722), Plaintiff claims "the evidence shows that the conditions, especially in combination, create impairments that leave Mr. Ball without the capacity to work"

---

and carpal tunnel syndrome, borderline intellectual functioning, anxiety, PTSD, and depression (Id. at PageID # 718). But Plaintiff only provides argument and cites evidence concerning the limiting effects of his right shoulder, left arm and hand, and bilateral knee conditions (DN 16-1PageID # 718-21).   It is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); see also Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); Rice v. Comm'r of Soc. Sec., 169 F. App'x 452, 453 (6th Cir. 2006). Therefore, the Court construes Plaintiff's argument as challenging the right shoulder, left arm and hand, and bilateral knee limitations ALJ Foster included in the physical RFC determination.

4 Plaintiff also makes a general assertion that ALJ Foster "failed to properly consider that the combined effects of Mr. Ball's severe impairments, in fact, meet several listings" (Id. at PageID # 722).   As Plaintiff fails to identify the "several listings" and explain why the evidence supports his position, the claim is deemed waived.   Layne, 192 F.3d at 566; see also Brindley, 61 F.3d at 509 (observing that "[w]e consider issues not fully developed and argued to be waived."); Rice, 169 F. App'x at 453.

(Id. at PageID # 722) (emphasis in original text).   In support of his third position (Id. at PageID # 722-23), Plaintiff cites consultative examiner Dr. Nickols' comments about progressively worsening pain (Tr. 501-02); and Plaintiff's testimony about his health getting worse since April 19, 2018 (Tr. 34).

Defendant views Plaintiff's position as alleging that ALJ Foster did not adequately consider Plaintiff's right shoulder/arm, neck, and knee impairments in making the RFC determination (DN 20 PageID # 740-49).   Defendant maintains that ALJ Foster properly considered Plaintiff's application and new evidence in light of Drummond v. Comm'r of Soc. Sec., 126 F.3d 837 (6th Cir. 1997), AR 98-4(6), and Earley v. Comm'r of Soc. Sec., 893 F.3d 929 (6th Cir. 2018) (Id. at PageID # 741-42).   Further, substantial evidence supports ALJ Foster's physical RFC determination (Id. at PageID # 742-43).   ALJ Foster appropriately explained why she did not find persuasive the opinion of consultative examiner Dr. Nickols and why the opinions of the two state agency physicians were more persuasive (Id. at PageID # 744-45).   Additionally, substantial evidence supports ALJ Foster's evaluation of Plaintiff's symptom complaints (Id. at PageID # 746-49).

2.   Applicable Law

The RFC finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations.   20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c).   The Administrative Law Judge makes this finding based on a consideration of medical source statements and all other evidence in the case record.   20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.945(a)(3), 416.946(c).   Thus, in making the RFC finding the Administrative Law Judge must necessarily evaluate the persuasiveness of

the medical source statements in the record and assess the claimant's subjective allegations.   20

C.F.R. §§ 404.1520c, 404.1529(a), 416.920c, 416.929(a).

The new regulations for evaluating medical opinions are applicable to Plaintiff's case

because he filed his application after March 27, 2017 (Tr. 15, 237-40, 241-51).   *See* 20 C.F.R.

§§ 404.1520c, 416.920c.   The new regulations explicitly indicate "[w]e will not defer or give any

specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior

administrative medical finding(s),"[5] in the record, even if it comes from a treating medical source.

20 C.F.R. §§ 404.1520c(a), 416.920c(a).[6]   Instead, Administrative Law Judges will now evaluate

the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing

the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation.   20 C.F.R.

§§ 404.1520c(a) and (b), 416.920c(a) and (b).   The five factors are supportability, consistency,

relationship with the claimant, specialization, and other factors.   20 C.F.R. §§

404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).[7]   Of these five factors, the two most important are

supportability and consistency.   20 C.F.R. §§ 404.1520c(a) and (b)(2), 416.920c(a) and (b)(2).

Further, the regulation requires Administrative Law Judges to explain how they considered the

supportability and consistency factors in determining the persuasiveness of the medical source's

---

5 At the initial and reconsideration levels State agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings."   20 C.F.R. §§ 404.1513a(a)(1),416.913a(a)(1). Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation.   20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

6 The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).

7 In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.   20 C.F.R. § 404.1520c(c)(3)(i)-(v), 416.920c(c)(3)(i)-(v).

opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Notably, under the regulations Administrative Law Judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

In assessing a claimant's RFC, the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make findings.  20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling 16-3p.  A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged.  20 C.F.R. §§ 404.1529(a), 416.929(a).  In determining whether a claimant suffers from debilitating pain and other symptoms, the two-part test set forth in Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986), applies.  First the Administrative Law Judge must examine whether there is objective medical evidence of an underlying medical condition.  If there is, then the Administrative Law Judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain."  Id.  When the reported pain and other symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the Administrative Law Judge will consider other information and factors which may be relevant to the degree of pain alleged. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  Those factors include the claimant's level of daily

activity, the frequency the claimant seeks treatment for the condition, inconsistencies in the evidence, and medication prescribed.   20 C.F.R. §§ 404.1529(c)(3)-(4), 416.929(c)(3)-(4).

In Drummond, the Sixth Circuit held that the principles of *res judicata* apply to RFC findings in the final decision of the Commissioner.   *See* 126 F.3d at 842-43.   More specifically, the Sixth Circuit directed that when there is final a decision concerning a claimant's entitlement to benefits and the claimant files a new application for benefits addressing the unadjudicated period of time that proximately follows the adjudicated period of time, the Commissioner is bound by the RFC findings in that final decision absent changed circumstances.   Id.   Notably, the Sixth Circuit indicated that the burden is on the Commissioner to introduce substantial evidence demonstrating changed circumstances to escape the principles of *res judicata*.   Id. at 843.

The Commissioner issued AR 98-4(6) directing states within the Sixth Circuit to follow the holding in Drummond.   In pertinent part, the Acquiescence Ruling explained:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the [Social Security] Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98–4(6), 1998 WL 283902, at *3 (June 1, 1998).

In Earley v. Comm'r of Soc. Sec., the Sixth Circuit noted that an administrative law judge honors the principles of *res judicata* articulated in Drummond "by considering what an earlier judge found with respect to a later application and by considering that earlier record."   893 F.3d 929, 933 (6th Cir. 2018).   "That is why it is fair for an administrative law judge to take the view

12

that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application."   Id.

3.   Discussion

In substantiating the basis for her RFC determination, ALJ Foster explained as follows:

> After reviewing the record, I find that the statements made by the claimant concerning the intensity, persistence, and limiting effects of his alleged symptoms are not entirely persuasive or consistent with the medical and other evidence in the record for the reasoning indicated herein.
>
> From the outset, pursuant to Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997), I take note that a prior Administrative Law Judge decision, which is of record at Exhibit B1A, was issued on April 19, 2018.   That decision reflected the claimant to have a physical residual functional capacity to perform light work with some postural, manipulative, visual, and environmental limitations.   The prior physical residual functional capacity finding is not substantially undermined by new and material evidence received in connection with the instant claim.
>
> First, with respect to the claimant's degenerative disc disease, it is notable that the claimant has not recently been identified as a candidate for neurosurgical intervention.   Nor has he even routinely required more conservative forms of pain management treatment such as epidural steroid injection therapy or chiropractic care.   In addition, as for the claimant's migraines, the clamant has not routinely required a substantial regimen of treatment for intractable headache pain.   Also, regarding the claimant's carpal tunnel syndrome, this condition continues to be mild.   The claimant has not consistently been documented having problems with significant deficits in his grip strength.
>
> Next, with respect to the claimant's degenerative joint disease, I observe there to have been some significant issues with knee and shoulder pain recently.   The claimant's left knee pain appears to have started abruptly during December of 2018.   Still, when the claimant went to the emergency room complaining of knee pain on January 2, 2019, he was just noted to walk with a slight limp, and x-rays of the left knee revealed only minimal degenerative changes. (Exhibit B8F/12, 22).   Moreover, the subsequent orthopaedic [sic]

treatment narrative reflected that magnetic resonance imaging of the left knee demonstrated just some mild chondromalacia of the patellofemoral joint without full thickness loss of the cartilage, and that the claimant's symptoms would be expected to likely improve with conservative care.  (Exhibit B9F/1, 7).  Overall, the claimant does not appear to have any lasting impairment in his gait or mobility that would compromise his ability to engage in a range of light work on a sustained basis.

As for the claimant's shoulder pain, the record shows that the clamant had an acute exacerbation of pain associated with calcific tendinitis of the right shoulder earlier this year.  While this does seem to have been quite significant, it does not appear to be an issue that will likely reasonably continue on a sustained basis.  In fact, at an orthopaedic [sic] clinic at Vanderbilt University Medical Center on July 8, 2019, it was indicated that a subacromial corticosteroid injection might improve the claimant's symptoms.  (Exhibit B11F/6).  The diagnostic evidence is also not overly remarkable.  X-rays of the claimant's right shoulder taken in June of 2019 revealed only a small calcific deposit and mild osteoarthritis. (Exhibit B11F/7).  In light of the very recent onset of the claimant's increased shoulder symptoms and the suggestion that they may abate with conservative treatment, I find the evidence insufficient to establish that any related functional limitations could be expected to last for 12 months.

The claimant is additionally noted to continue to have a visual impairment of the right eye, which is reportedly related to a history of stroke.  He has previously been diagnosed with ischemic optic neuropathy of the right eye.  (Exhibit B7F/8).  Be that as it may, the claimant maintains a driver's license and currently is able to drive.  He indicated at the hearing that he only avoids driving at night.  Pursuant to SSR 19-2p, the claimant is noted to have some ongoing issues with obesity as well.  On January 2, 2019, he was reported to stand 68 inches in height and to weigh 240 pounds. (Exhibit B8F/11).  Nevertheless, no treating source appears to have regularly suggested the claimant's weight status to have excessively interfered with the claimant's ability to function or move about.

Again, the prior physical residual functional capacity finding is not substantially undermined by new and material evidence received in connection with the instant claim.  Indeed, it is reasonably supported by and consistent with the overall objective medical findings and treatment narrative since the alleged onset date.

14

Accordingly, it is found to be persuasive and adopted at present, and restrictions commensurate therewith have been duly incorporated within the above-stated current residual functional capacity finding.

In addition, with respect to the claimant's mental functioning, I observe that the claimant was limited to simple tasks in the prior Administrative Law Judge decision.   Such a limitation reasonably continues and is adopted at present.   However, new and material evidence has been received to indicate the claimant to have some additional mental work-related limitation.   Notably, the psychological consultative examination report at Exhibit B5F suggests the claimant to have some issues with social functioning and stress tolerance.   The psychological consultative examiner, Margaret Sergeant, Ph.D., in addition to documenting the claimant to have previously been shown to have a full-scale IQ in the borderline range of intellectual functioning, diagnosed the claimant with PTSD and an unspecified anxiety disorder.   The treatment record has indicated the claimant to have some issues with depression as well.   For instance, he was reported on July 9, 2018, to have been isolated and sad with anhedonia.   Still, a depression assessment score from this time just indicated the claimant's depression to be moderate.   (Exhibit B4F/2).

Dr. Sergeant has opined the claimant to have a moderate level of impairment in the ability to tolerate stress and pressure of day-to-day employment and regarding the ability to respond appropriately to supervisors, coworkers, and the public in a work setting. (Exhibit B5F/4).   This opinion is not wholly unsupported by or inconsistent with other substantial evidence.   Of particular note, the claimant has not been shown to have required crisis stabilization treatment for marked or extreme psychologically based symptoms. Consequently, I find said opinion to be most persuasive and accept same.   Mental restrictions based thereon have been duly incorporated within the above-stated current residual functional capacity finding as well.

As for the remaining medical opinion evidence, I note that examining physician Alexis K. Nickols, M.D., suggested the claimant to be able to sit, stand, or walk for no longer than 30 minutes at a time and that he could lift or carry no more than 10 pounds.   (Exhibit B6F/2).   This opinion is unpersuasive because it is clearly not supported by or consistent with the diagnostic and objective physical examination findings of record on a sustained basis since the alleged onset date.   In fact, even Dr. Nickols noted

15

the claimant to be able to sit and stand without difficulty upon physical examination.  (Exhibit B6F/2).

Lastly, Exhibits B2A, B3A, B6A, and B7A are noted to show that the State agency consultants, Timothy Gregg, M.D., Christi Bruening, Ph.D., P. Saranga, M.D., and Mary K. Thompson, Ph.D., adopted the prior Administrative Law Judge decision.  Outside of some additional mental restrictions, the prior administrative medical findings are generally supportive of and consistent with the above-stated current residual functional capacity finding, and are determined to be persuasive in this regard.

(Tr. 19-20).

ALJ Foster's assessment of the new medical evidence—addressing Plaintiff's physical and mental conditions from April 20, 2018 through November 29, 2019—comports with applicable law because ALJ Foster adopted ALJ Thomas' RFC findings except in those circumstances where the new evidence materially supported imposition of a more restrictive or new physical or mental limitation.  *See* Drummond, 126 F.3d at 842-843; AR 98-4(6).  Further, contrary to Plaintiff's assertion, ALJ Foster considered the combined effects of Plaintiff's physical and mental impairments in assessing his RFC (Tr. 18-21).

To the extent Plaintiff seeks to challenge ALJ Foster's physical RFC findings—concerning limitations imposed by Plaintiff's right shoulder, left arm and hand, and both knees—the above analysis demonstrates ALJ Foster's command of the evidence in the record.   While Plaintiff has cited four instances where comments in treatment notes—about his right shoulder, left arm and hand, and knees—are consistent with his testimony, this falls woefully short of demonstrating an absence of substantial evidence supporting ALJ Foster's physical RFC findings regarding these conditions.   Moreover, Plaintiff cites his own subjective comments in the cited treatment notes as opposed to objective medical evidence substantiating his claims (Tr. 501-02, 515-58, 592, 605).

16

Additionally, Plaintiff overlooks Dr. Farmer's comment on April 10, 2019 that x-rays of Plaintiff's knees reveal "some mild degenerative changes" (Tr. 592). Plaintiff turns a blind eye to Dr. Jain's observation on July 8, 2019 that x-rays of the right shoulder show a small calcific deposit and Plaintiff "displays near out of proportion pain due to his calcific tendinitis" (Tr. 606). And while Plaintiff presented at the emergency room on January 2, 2019 with a complaint of acute pain in the left knee (Tr. 517, 523), an examination revealed no obvious swelling or deformity to the left knee, and x-rays showed minimal degenerative changes (Tr. 526). Further, all the emergency room did was place Plaintiff's knee in an immobilizer and instructed him to "utilize rest, ice, compression, elevation and Tylenol and ibuprofen for pain" (Tr. 526-27). Although Dr. Nickols' exam revealed "[l]imited range of motion of the right shoulder and lumbar and cervical spine[,]" it also showed that Plaintiff had a normal gait, the ability to get on/off the exam table without assistance, normal posture, no swelling, no erythema, no atrophy, no spasm, no tenderness, 5/5 bilateral grip, 5/5 bilateral upper and right lower extremity strength, 4/5 left lower extremity strength, and no demonstration of active rheumatoid arthritis (Tr. 502).

To the extent that Plaintiff challenges ALJ Foster's evaluation of the persuasiveness of the medical source statements in the record, ALJ Foster explained how she considered the supportability and consistency factors in determining the persuasiveness of the medical opinions expressed by Dr. Sergeant, Dr. Nickols, and the administrative medical findings of Drs. Gregg, Bruening, Saranga, and Thompson (Tr. 21). Thus, ALJ Foster's findings comport with applicable law. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Further, substantial evidence in the record supports ALJ Foster's findings concerning the supportability and consistency factors in determining the persuasiveness of the medical opinions and administrative medical findings.

17

In the context of assessing Plaintiff's subjective statements regarding pain and other symptoms, ALJ Foster found there is objective medical evidence of several underlying medical conditions (Tr. 17-21).   But ALJ Foster found the objectively established medical conditions were not of such severity that they can reasonably be expected to produce the alleged disabling pain and other symptoms (Tr. 19-21).   Inasmuch as the reported pain and other symptoms suggested impairments of greater severity than could be shown by objective medical evidence, ALJ Foster appropriately considered other information and factors which may be relevant to the degree of pain and other symptoms alleged (Tr. 17-21).   20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).   The ALJ found from the medical record and Plaintiff's testimony that Plaintiff does not suffer pain and other symptoms to the extent he testified.   In the absence of detailed corroborating evidence of Plaintiff's subjective complaints, it becomes the duty of the ALJ to assess the degree to which Plaintiff suffers from the pain and other symptoms.   Since tolerance of pain and other symptoms is a highly individualized matter, the conclusion of the Administrative Law Judge, who has the opportunity to observe the claimant's demeanor, "should not be discharged lightly." Houston v. Sec'y of Health & Human Servs., 736 F.2d 365, 367 (6th Cir. 1984) (citing Beavers v. Sec'y of Health, Educ. & Welfare, 577 F.2d 383 (6th Cir. 1978)).   The undersigned concludes that the ALJ's findings are supported by substantial evidence and fully comport with applicable law.

In sum, Plaintiff's three challenges have failed to demonstrate the absence of substantial evidence supporting ALJ Foster's RFC findings.   Therefore, Plaintiff is not entitled to relief as to her challenges to ALJ Foster's RFC determination.

Challenge to Vocational Determination

1. Arguments of the Parties

Plaintiff contends at the very least ALJ Foster should have limited him to sedentary work which would have resulted in a partially favorable decision on his fiftieth birthday, July 27, 2019, under the GRID rules (DN 16-1 PageID # 723-24). Defendant contends that the vocational expert's testimony—in response to ALJ Foster's hypothetical question—constitutes substantial evidence to support the final decision of the Commissioner (DN 20 PageID #745 n.6).

2. Applicable Law

At the fifth step, the Commissioner has the burden of demonstrating a significant number of jobs exist in the national economy that the claimant can perform, given his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and (g), 404.1566(a), 416.920(a)(4)(v) and (g), 416.966(a); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). When a claimant's age, education, previous work experience, and residual functional capacity coincide with all of the criteria of a particular Grid Rule in Appendix 2 of the regulations, referred to as the medical-vocational guidelines, the Commissioner may rely on that Grid Rule to meet this burden. 20 C.F.R. §§ 404.1569, 416.969; Grid Rule 200.00; Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Moon, 923 F.2d at 1181. However, if a claimant's age, education, previous work experience, and residual functional capacity do not coincide with all the criteria of a particular Grid Rule, the Commissioner is limited to using the Grid Rule as a framework in the decision-making process and must make a non-guideline determination based on the testimony of a vocational expert. 20

C.F.R. §§ 404.1566(e), 416.966(e); <u>Born</u>, 923 F.2d at 1174; <u>Varley v. Sec'y of Health & Human</u>

<u>Servs.</u>, 820 F.2d 777, 779 (6th Cir. 1987); <u>Kirk v. Sec'y of Health & Human Servs.</u>, 667 F.2d 524,

531, 535 (6th Cir. 1981), <u>cert. denied</u>, 461 U.S. 957 (1983).   For example, if the claimant suffers

from an exertional and a non-exertional impairment then the Grids may be used only as a

framework to provide guidance for decision making.   20 C.F.R. §§ 404.1569a(d) and

416.969a(d); 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); <u>Abbot v. Sullivan</u>,

905 F.2d 918, 926-927 (6th Cir. 1990); <u>Cole v. Sec'y of Health & Human Servs.</u>, 820 F.2d 768,

771 (6th Cir. 1987); <u>Kirk</u>, 667 F.2d at 528-529.

    3.   Discussion

    Plaintiff has not identified a specific Grid Rule substantiating his assertion that an RFC for

sedentary work would have resulted in a finding of disabled.   Arguably, the issue has been

adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation,

and should be deemed waived.   <u>United States v. Layne</u>, 192 F.3d 556, 566 (6th Cir.1999) (quoting

<u>McPherson v. Kelsey</u>, 125 F.3d 989, 995-96 (6th Cir.1997)); *see also* <u>Brindley v. McCullen</u>,

61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and

argued to be waived."); <u>Rice v. Comm'r of Soc. Sec.</u>, 169 F. App'x 452, 453 (6th Cir. 2006).

    Notwithstanding, for the reasons set forth above substantial evidence supports ALJ Foster's

determination that Plaintiff has the RFC to perform light work with certain postural, manipulative,

environmental, and mental limitations (*see* Tr. 18-19).   ALJ Foster's hypothetical question to the

vocational expert accurately reflects the limitations set forth in the RFC determination (Tr. 18-19,

46).   The vocational expert responded by identifying the following three jobs: Laundry worker,

Dictionary of Occupational Titles ("DOT") No. 369.687-018 with 155,000 jobs nationally; packer,

DOT No. 559.687-074 with 365,000 jobs nationally; and ticket taker, DOT No. 344.667-010 with 85,000 jobs nationally (Tr. 47).   The vocational expert's testimony provides substantial evidence to support ALJ Foster's conclusion—considering Plaintiff's age, education, work experience, and RFC—that Plaintiff is capable of making a successful adjustment to other work that exist in significant numbers in the national economy (Tr. 22-23).   Therefore, Plaintiff is not entitled to relief as to her challenge to ALJ Foster's step five determination.

## Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion."   Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004).   Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g).   Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.   (Id.).   After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to his challenge.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

January 13, 2022

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:        Counsel